**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHARLES PICARELLA JR., | : | Civil No. 3:25-cv-1645 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | **FILED** |
| COUNTY OF NORTHUMBERLAND, | : | **SCRANTON** |
| *et al.*, | : | |
| | : | JUN 0 9 2026 |
| Defendants | : | PER _____ |
| | | DEPUTY CLERK |

## MEMORANDUM

Plaintiff Charles Picarella ("Picarella") filed this *pro se* civil rights action pursuant to

42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Northumberland County, Warden

Thomas Reisinger, Sheriff Robert Wolfe, Commissioner Samuel J. Schiccatano,

Commissioner Joseph M. Klebon, Commissioner Meghan K. Beck, and Controller

Christopher L. Grayson. (*Id.* ¶¶ 5-11). The crux of Picarella's claim is that Defendants

infringed upon his Fourteenth Amendment right to marry in violation of Section 1983.

Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6). (Doc. 18). The motion for is ripe for disposition. For the

reasons set forth below, the motion will be granted in part and denied in part.

I.    **Legal Standards**

A.    Federal Rule of Civil Procedure 12(b)(6)

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "factual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

2

*Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

3

B.    Section 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

## II.    Allegations of the Complaint

At all relevant times, Picarella was housed as a pretrial detainee at the Northumberland County Jail, from May 10, 2024 to June 4, 2024. (Doc. 1 ¶ 14). Picarella alleges that, when he was housed at the Northumberland County Jail, the facility had a "policy [that] prohibited prisoner marriage in all circumstances, without exception." (*Id.* ¶ 16). He asserts that this policy was explicitly stated in the Northumberland County Jail inmate handbook. (*Id.* ¶ 17).

4

On May 21, 2024, Picarella submitted a written request to the Warden seeking authorization to marry his fiancée. (*Id.* ¶ 18). In response, the Deputy Warden denied Picarella's authorization for the marriage, stating that the Northumberland County Jail's policy "categorically prohibited prisoners from marrying under any circumstance." (*Id.* ¶ 19).

On May 24, 2024, Picarella filed a formal grievance challenging the Northumberland County Jail's "blanket prohibition" on prisoner marriage. (*Id.* ¶ 21). On May 25, 2024, Defendant Reisinger allegedly denied the grievance and "affirmed [the Northumberland County Jail's] marriage prohibition." (*Id.* ¶ 22). Picarella appealed the grievance denial. (*Id.* ¶ 23). On June 3, 2024, Defendant Reisinger allegedly denied the grievance appeal, "thereby reaffirming [the Northumberland County Jail's] prohibition on prisoner marriage." (*Id.* ¶ 24).

Picarella alleges that Defendants Northumberland County, Reisinger, Wolfe, Schiccatano, Klebon, Beck, and Grayson permitted the Northumberland County Jail "to enforce a policy, practice, and custom prohibiting prisoners, including Picarella, from marrying." (*Id.* ¶ 25). He further alleges that Defendants Northumberland County, Reisinger, Wolfe, Schiccatano, Klebon, Beck, and Grayson "failed and refused to enact policies, procedures, or practices allowing prisoners, including Picarella, to marry, despite the well-established constitutional right to do so." (*Id.* ¶ 26). Picarella asserts that by "enforcing, maintaining, and failing to repeal or modify [the Northumberland County Jail's] marriage prohibition," Defendants Northumberland County, Reisinger, Wolfe, Schiccatano,

Klebon, Beck, and Grayson, "deprived Picarella of his constitutional right to marry." (*Id.* ¶ 41).

### III.    Discussion

#### A.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity on the First and Fourteenth Amendment Claims. (Doc. 19, at 8-11). Picarella "stipulates that the First Amendment claim should be dismissed." (Doc. 23, at 9). Therefore, the Court considers whether Defendants are entitled to qualified immunity with respect to the Fourteenth Amendment claim.

In order to establish a civil rights claim, Picarella must show the deprivation of a right secured by the United States Constitution or the laws of the United States. However, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction,

and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first).

The Court will first consider whether a constitutional violation as alleged by Picarella actually exists.

"The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Toms v. Taft*, 338 F.3d 519, 526 (6th Cir. 2003) (quoting *Loving v. Virginia*, 388 U.S. 1, 12 (1967)). While inmates have a right to marry, the Supreme Court has held that this right may be restricted where the

restriction is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 79 (1987). In *Turner*, the Court struck down a Missouri regulation prohibiting prisoners from marrying unless the superintendent found compelling reasons to permit marriage. *Id.* at 80. The Court stated: "Although prison officials may regulate the time and circumstances under which a marriage takes place, and may require prior approval by the warden, the almost complete ban on marriages here is not, on the record, reasonably related to legitimate penological objectives." *Id.* at 79. Courts have also held "that security concerns can justify limiting the rights of prisoners in protective custody." *Houseknecht v. Doe*, 653 F. Supp. 2d 547, 557 (E.D. Pa. 2009) (citing cases).

Picarella alleges that, when housed at the Northumberland County Jail, the "facility policy prohibited prisoner marriage in all circumstances, without exception." (Doc. 1 ¶ 16). In response, Defendants argue that Warden Reisinger did not impose an absolute prohibition on Picarella's marriage, but only a delay in approving Picarella's marriage pending a discussion with the Solicitor. (Doc. 19, at 9-10). *See, e.g.*, *Miller v. Wenerowicz*, 135 F. Supp. 3d 306, 311-12 (E.D. Pa. 2015), *aff'd*, 648 F. App'x 161 (3d Cir. 2016) (*per curiam*) (granting summary judgment on qualified immunity grounds to superintendent of prison who delayed for ten months approval of inmate's request to marry because it was not clearly established that delay would violate inmate's constitutional rights). According to the allegations of Picarella's complaint, the prison policy precluded inmates from marrying while incarcerated. (Doc. 1 ¶¶ 16, 17, 39-40). While Defendants argue that Reisinger's delay in

8

approving the marriage pending a discussion with the Solicitor was reasonable because Picarella was incarcerated for assaulting his fiancée, this argument requires the Court to consider factual matters outside the pleadings. At this stage of these proceedings, an assessment of whether the Northumberland County Jail marriage policy completely prevented Picarella from marrying his fiancée while incarcerated, or whether Defendants delayed his marriage pending a discussion with the Solicitor, is not possible. Rather, this assessment would entail a consideration of facts beyond the pleadings, something which can only be done in a properly filed motion for summary judgment. Therefore, at this stage, the Court must deny the motion to dismiss without prejudice to the filing of a summary judgment motion addressing this claim.

B.     Official Capacity Claims Against Reisinger, Wolfe, Schiccatano, Klebon, Beck, and Grayson

Picarella asserts official capacity claims against Defendants Reisinger, Wolfe, Schiccatano, Klebon, Beck, and Grayson, all of whom are identified as employees of Northumberland County. (Doc. 1 ¶¶ 6-13). The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

9

Additionally, the United States Court of Appeals for the Third Circuit has held that, where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation, but are instead named as defendants because of their positions in state government, they are deemed to be sued in their official capacities and thus entitled to Eleventh Amendment immunity. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.

Picarella "stipulates that the Official Capacity claims against Defendants Reis[]inger, Wolfe, Shicc[][a]tano, Klebon, Beck, and Grayson should be dismissed." (Doc. 23, at 9). Therefore, Picarella's official capacity claims will be dismissed.

However, state officials sued in their individual capacities are "persons" within the meaning of Section 1983. *See Hafer*, 502 U.S. at 31. Thus, the Eleventh Amendment does not bar suits for monetary damages brought under Section 1983 against state officials in their individual capacities. *Id.* Picarella's individual capacity claims against the Defendants are addressed below.

10

C.    Lack of Personal Involvement of Wolfe, Schiccatano, Klebon, Beck, and Grayson

Defendants argue that Wolfe, Schiccatano, Klebon, Beck, and Grayson should be dismissed because Picarella does not plead their personal involvement in any underlying wrongdoing. (Doc. 19, at 12-14).

In the complaint, Picarella alleges that Defendants Sheriff Wolfe, Commissioner Schiccatano, Commissioner Klebon, Commissioner Beck, and Controller Grayson are members of the Prison Board. (Doc. 1 ¶¶ 7-11). Picarella alleges that: (1) Defendants Wolfe, Schiccatano, Klebon, Beck, and Grayson permitted the Northumberland County Jail "to enforce a policy, practice, and custom prohibiting prisoners, including Picarella, from marrying"; (2) Defendants Wolfe, Schiccatano, Klebon, Beck, and Grayson "failed and refused to enact policies, procedures, or practices allowing prisoners, including Picarella, to marry, despite the well-established constitutional right to do so"; and (3) due to Defendants' policies and action, "Picarella was unable to obtain authorization to marry and was prevented from marrying his fiancée while incarcerated at [the Northumberland County Jail]." (Doc. 1 ¶¶ 25-27).

Section 1731 of Title 61 provides for boards of inspectors of county jails or prisons "[i]n counties of the third, fourth and fifth class[.]" 61 Pa. C.S.A. § 1731(a)(1).

11

Northumberland County is considered a county in the fifth class.[1]  In addition, the board is comprised of the following members: the president judge of the court of common pleas or a judge designated by him; the district attorney; the sheriff; the controller; and the county commissioners.  *See id.* § 1731(a)(2).  "[T]he board and the officers appointed by it" are authorized to "provide for the safekeeping, discipline and employment of inmates and the government and management of the correctional institution."  *Id.* § 1731(a)(3).  The board is also empowered to "make such rules and regulations for the government and management of the county correctional institution and the safekeeping, discipline and employment of the inmates, as may be deemed necessary."  *Id.* § 1732(b)(1); *see also id.* § 1732(a) (providing that "[a] majority of the members of the board shall constitute a quorum for the transaction of business, and all actions of the board shall be by the approval of a majority of all the members of the board").  Thus, based upon this statutory law, the rules and regulations for the government and management of the prison, as well as the health and safekeeping of the inmates, are the responsibility of the board.  *See id.* §§ 1731, 1732.

In addition to this statutory law, federal courts have held, in the context of Section 1983 claims arising in Pennsylvania, that a prison board "would be the proper defendant against which to assert *Monell* liability for unlawful prison policies or customs[.]" *White v. Pennsylvania,* 22-cv-01692, 2024 WL 915558, at *1 (M.D. Pa. Mar. 4, 2024); *Fleckenstein*

---

[1]    Information concerning county classes in Pennsylvania is available at the following website: https://www.pacourts.us/news-and-statistics/research-and-statistics/dashboard-table-of-contents/resources/WebHelp/General_Information/County_Classes.htm.

*v. Crawford*, 14-cv-01085, 2015 WL 5829758, at \*7 (M.D. Pa. Oct. 1, 2015) (adopting report and recommendation that the plaintiffs had adequately stated a municipal liability claim under Section 1983 against the county prison board); *Bradley v. PrimeCare Med. Inc.*, No. 12-cv-00292, 2013 WL 1149267, at \*6-7 (M.D. Pa. Mar. 19, 2013) (explaining that Pennsylvania law specifically provides that the county prison board is responsible for the policies and management of the county prison, not the county itself); *Goodine v. Lackawanna Cnty. Sheriff*, 8-cv-01898, 2010 WL 830956, at \*5 (M.D. Pa. Mar. 4, 2010) (stating that a county prison board is a local government unit and is, therefore, amenable to suit under Section 1983); *see also Williams v. Delaware Cnty. Bd. of Prison Inspectors*, 844 F. App'x 469, 475 (3d Cir. 2021) (recognizing the defendant's arguments that the Pennsylvania county was not liable for the pretrial detainee's Section 1983 claim because the county did not exercise control over the correctional facility under Pennsylvania law and that, instead, the prison board controlled the administration of the facility (citing, in part, 61 Pa. C.S.A. § 1731)).

Thus, the Court observes that Picarella's complaint, while it names the individual members of the Prison Board, does not challenge the conduct of the individual members, and, instead, challenges the conduct of the Prison Board, as a whole. The Court finds that this is consistent with Pennsylvania law, which requires approval of a majority of the members of the Prison Board for actions taken by the Prison Board. *See* 61 Pa. C.S.A. § 1732(a) (providing that "[a] majority of the members of the board shall constitute a quorum

13

for the transaction of business, and all actions of the board shall be by the approval of a majority of all the members of the board").

Accordingly, the Court will grant Defendants' motion to dismiss the individual members that comprise the Prison Board and will direct Picarella to file an amended pleading naming the Prison Board as a Defendant. *See* 61 Pa. C.S.A. §§ 1731, 1732; *Tarapchak v. Lackawanna Cnty.*, 173 F. Supp. 3d 57, 85 (M.D. Pa. 2016) (stating that, "[i]n Pennsylvania, the prison board is the authorized policymaker for county prisons, tasked with making policy decision regarding the safekeeping, discipline, and employment of inmates").

### D. *Monell*[2] Claim

Defendants argue that Picarella's *Monell* claim must be dismissed because he failed to adequately plead an underlying constitutional violation, and he failed to properly plead a custom or practice within Northumberland County that prohibited inmates from marrying. (Doc. 19, at 14-18). The Court finds that, at this stage, the complaint adequately pleads a *Monell* claim.

Municipalities and other local governmental entities or officials may not be held liable under federal civil rights laws for the acts of their employees under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. 662; *see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991). However, they may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or

---

2    *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

14

acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To sustain a *Monell* municipal liability claim, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" to prevail. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." *Brown*, 520 U.S. at 404; *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)) (citations omitted). A plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Brown*, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference...[of the constitutional] rights of persons....'" *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" *Woloszyn*, 396 F.3d at 325 (citations omitted).

Any analysis of a claim under *Monell* requires separate consideration of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." *Collins v. City of Harker Heights,*

15

*Texas*, 503 U.S. 115, 120 (1992). Thus, a municipality or other local government may be liable under this section only if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *Connick v. Thompson*, 563 U.S. 51 (2011); *Monell*, 436 U.S. at 692. However, under § 1983, local governments are responsible only for "their own illegal acts," and "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60. Accordingly, plaintiffs who seek to impose liability on local governments for federal civil rights violations must prove that "action pursuant to official municipal policy" caused the injury complained of. *Connick*, 563 U.S. at 60.

In *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003), the Third Circuit Court of Appeals further explained that there are "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983[:]"

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Natale*, 318 F.3d at 584 (internal quotation marks and citations omitted).

16

Here, Picarella identifies an alleged policy or custom which he maintains is unconstitutional—a policy that prohibited inmates from marrying. (Doc. 1 ¶¶ 16, 17, 25-27, 39-40). The Court finds that Picarella alleges sufficient factual content to raise a reasonable inference that Northumberland County maintained a policy that did not allow inmates to marry. The Court thus concludes that the complaint plausibly alleges a *Monell* claim. Defendants may renew their argument if they file for summary judgment after discovery has concluded.

## IV.    Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the plaintiff leave to amend the complaint unless amendment would be inequitable or futile. *See Grayson*, 293 F.3d at 114. "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted).

Picarella's First Amendment claim and the official capacity claims against Reisinger, Wolfe, Schiccatano, Klebon, Beck, and Grayson are factually and legally flawed and thus incurable. Moreover, Picarella agrees to dismissal of these claims. (Doc. 23, at 9). Therefore, the Court concludes that curative amendment would be futile.

However, as set forth herein, the Court will grant Picarella an opportunity to amend so that he can name the Prison Board as a Defendant.

17

## V.    Conclusion

For the reasons stated above, Defendants' motion to dismiss will be granted in part and denied in part.  (Doc. 18).

The motion to dismiss the First Amendment claim and the official capacity claims against Reisinger, Wolfe, Schiccatano, Klebon, Beck, and Grayson will be granted.

The motion to dismiss the claims against Wolfe, Schiccatano, Klebon, Beck, and Grayson (the individual members of the Prison Board) will also be granted.  The Court will grant Picarella leave to amend his pleading to name the Prison Board as a Defendant in this action.

The motion to dismiss the Fourteenth Amendment claim based on qualified immunity and the *Monell* claim will be denied.

A separate Order shall issue.


Robert D. Mariani
United States District Judge

Dated: June _9_ , 2026